## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---

ELAINE WANG,

    Plaintiff,

v.

MOMENTA PHARMACEUTICALS, INC., JANE F. BARLOW, BRUCE DOWNEY, GEORGES GEMAYEL, STEVEN C. GILMAN, DONNA ROY GROGAN, JOSE-CARLOS GUTIERREZ-RAMOS, ELIZABETH STONER, and CRAIG A. WHEELER,

    Defendants.

Case No. _____

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Momenta Pharmaceuticals, Inc. ("Momenta or the "Company") and the members of Momenta's board of directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Momenta by affiliates of Johnson & Johnson ("Johnson & Johnson" or "J&J").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on September 2, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to the Company's stockholders. The Solicitation Statement recommends that the Company's stockholders tender their shares in support of a proposed transaction whereby Vigor Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Johnson & Johnson, will merge with Momenta, with Momenta continuing as the surviving corporation and a wholly-owned subsidiary of J&J (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated August 19, 2020 (the "Merger Agreement"), each Momenta common share issued and outstanding will be converted into the right to receive $52.50 per share in cash (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer") to acquire all of Momenta's outstanding common stock and the Tender Offer will expire on September 30, 2020.

3. Defendants have now asked Momenta's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Momenta's financial projections relied upon by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Centerview Partners LLC ("Centerview"), in their financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisors. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Momenta's stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the Tender Offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Momenta's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendant Momenta is incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Momenta common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Jane F. Barlow has served as a member of the Board since December 2019.

11. Individual Defendant Bruce Downey has served as a member of the Board since June 2009 and as the Chairman of the Board since June 2018.

12. Individual Defendant Georges Gemayel has served as a member of the Board since January 2010.

13. Individual Defendant Steven C. Gilman has served as a member of the Board and since June 2016.

14. Individual Defendant Donna Roy Grogan has served as a member of the Board and since September 2019.

15. Individual Defendant Jose-Carlos Gutierrez-Ramos has served as a member of the Board and since March 2016.

16. Individual Defendant Elizabeth Stoner has served as a member of the Board and since October 2007.

17. Individual Defendant Craig A. Wheeler has served as a member of the Board and since August 2006.

18. Defendant Momenta is incorporated in Delaware and maintains its principal offices at 301 Binney Street, Cambridge, Massachusetts 02142. The Company's common stock trades on the NASDAQ Exchange under the symbol "MNTA."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.   <u>**The Proposed Transaction**</u>

21.   Momenta, a biotechnology company, focuses on the discovery and development of novel biologic therapies for the treatment of rare immune-mediated diseases in the United States. Its novel therapeutic programs include M281, a fully-human anti-neonatal Fc receptor (FcRn), aglycosylated immunoglobulin G (IgG1), and monoclonal antibody to reduce circulating IgG antibodies by blocking endogenous IgG recycling via FcRn; M230, a recombinant trivalent human IgG1 Fc multimer containing three IgG Fc regions joined to maximize activity; and M254, a hyper-sialylated immunoglobulin to treat various inflammatory diseases, including idiopathic thrombocytopenic purpura and chronic inflammatory demyelinating polyneuropathy. The Company's biosimilar programs comprise M923, a biosimilar of HUMIRA for the treatment of patients with rheumatoid arthritis, crohn's disease, ulcerative colitis, and psoriasis; and M710, a biosimilar of EYLEA for the treatment of neovascular age-related macular degeneration, macular edema following retinal vein occlusion, diabetic macular edema (DME), and diabetic retinopathy in patients with DME. Its complex generics programs include Enoxaparin sodium injection, a generic version of LOVENOX that is indicated for the prevention and treatment of deep vein thrombosis, as well as supports the treatment of acute coronary syndromes; GLATOPA, a generic version of once-daily COPAXONE for the treatment of patients with relapsing forms of multiple sclerosis; and GLATOPA, a generic version of three-times-weekly COPAXONE. The Company has collaboration and license agreements with Sandoz AG, Mylan Ireland Limited, and CSL Behring Recombinant Facility AG. The Company was formerly known as Mimeon, Inc. and changed its name to Momenta Pharmaceuticals, Inc. in September 2002. Momenta was founded in 2001 and is headquartered in Cambridge, Massachusetts.

22.   On August 19, 2020, the Company announced the Proposed Transaction:

CAMBRIDGE, Mass., Aug. 19, 2020 (GLOBE NEWSWIRE) -- Momenta Pharmaceuticals, Inc. (Nasdaq: MNTA, "Momenta" or the "Company"), a biotechnology company focused on discovering and developing novel biologic therapeutics to treat rare immune-mediated diseases announced today that it has entered into a definitive agreement for Johnson & Johnson ("Johnson & Johnson" or "J&J") to acquire Momenta for $52.50 per share in an all-cash transaction, implying a fully-diluted equity value of $6.5 billion. The agreement was unanimously approved by the Boards of Directors of both Momenta and Johnson & Johnson.

"The agreement with J&J recognizes the value created by years of commitment and dedication to our mission by the many current and past Momenta employees. Programs such as nipocalimab have the potential to improve the lives of countless patients suffering from autoimmune and fetal maternal diseases," said Craig Wheeler, President and Chief Executive Officer of Momenta. "This acquisition provides strong value for our shareholders and ensures a level of investment in our exciting portfolio that will further enhance its potential for patients. I believe J&J is the right company to advance our portfolio of novel drug candidates for autoimmune and rare diseases. J&J's leadership in immunology, extensive capabilities, and global reach, as well as its alignment with our vision of pioneering therapies for complex diseases is a strong fit for our company and our portfolio."

The transaction is expected to close in the second half of 2020, pending the satisfaction of all conditions to the completion of the tender offer and merger. Until that time, Momenta will continue to operate as a separate and independent company.

Momenta's financial advisors are Goldman Sachs & Co. LLC and Centerview Partners LLC, Latham & Watkins LLP is acting as legal counsel for Momenta and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal counsel for Goldman Sachs & Co. LLC and Centerview Partners LLC.

**Transaction Details**

Under and subject to the terms of the agreement, Vigor Sub, Inc. ("Merger Sub"), a newly formed wholly owned subsidiary of Johnson & Johnson, agreed to commence a tender offer to acquire all outstanding shares of Momenta common stock for $52.50 per share in cash and Momenta agreed to file a recommendation statement containing the unanimous recommendation of the Momenta board that Momenta stockholders tender their shares to Merger Sub. Following the completion of the tender offer, Johnson & Johnson expects to promptly consummate a merger of Momenta with Merger Sub, in which shares of Momenta that have not been tendered in the tender offer will be acquired by Johnson & Johnson and converted into the right to receive the same cash price per share as paid in the tender offer.

>The closing of the tender offer is subject to customary closing conditions, including the tender of a majority of outstanding Momenta shares on a fully diluted basis and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. The merger agreement includes customary termination provisions for both Momenta and Johnson & Johnson.

* * *

23.     It is therefore imperative that Momenta's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.      The Materially Incomplete and Misleading Solicitation Statement**

24.     On September 2, 2020, Momenta filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

25.     The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by Goldman Sachs and Centerview, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisors in support of their fairness opinions.

*Omissions and/or Material Misrepresentations Concerning Momenta Financial Projections*

26. The Solicitation Statement fails to provide material information concerning financial projections by Momenta management and relied upon by financial advisors in their analyses. The Solicitation Statement indicates that in connection with the rendering of the fairness opinions, the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Momenta management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Projections prepared by Company management for Momenta for fiscal years 2020 through 2024, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (a) EBIT; (b) EBIT Excl. Other Pipeline/Platform R&D; and (c) Unlevered Free Cash Flow (as calculated by Goldman Sachs and Centerview), but fails to disclose: (i) the line items used to calculate the non-GAAP measures; or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

28. When a company discloses non-GAAP financial measures in a solicitation statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC

regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

31. Further, the Solicitation Statement notes that, in connection with preparing the fairness opinion, Goldman Sachs reviewed, along with the Projections, certain analyses prepared by the management of the Company related to the expected utilization by the Company of certain net operating loss carryforwards of the Company, as approved for Goldman Sachs' use

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

by the Company (the "NOL Forecasts"). Solicitation Statement at 28. However, the Solicitation Statement fails to disclose the NOL Forecasts. Such forecasts are material to Momenta's shareholders, as the Board cites the Company's NOL Forecasts and the expectation that the utilization of such NOLs as a reason why Momenta shareholders should tender their shares in support of the Proposed Transaction. The omission of the NOL Forecasts render the summary of Goldman Sachs' analyses which utilized the NOL Forecasts incomplete and misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs' Financial Analyses*

32. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* and *Illustrative Sum-of-the-Parts Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the NOL Forecasts; (ii) the basis for applying the range of discount rates from 8.0% to 10.0%; (iii) the basis for applying a range of perpetual growth rates of 0.0% to 2.0%; (iv) the Company's unlevered cash flows used in the analyses; (v) the number of fully diluted outstanding shares of the Company as of August 14, 2020; (vi) the estimates of the benefits to be derived by the Company from its utilization of its net operating losses as reflected in the NOL Forecasts; and (vii) the Company's net cash.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analyses*

33. With respect to Centerview's *Selected Public Company Analysis*, the Solicitation Statement fails to disclose Centerview's basis for selecting a reference range of 2024E EV/Revenue Multiples of 4.5x to 8.0x.

34. With respect to Centerview's *Selected Transactions Analysis*, the Solicitation Statement fails to disclose Centerview's basis for selecting a reference range of Five-Year Forward Revenue Multiples of 6.0x to 9.5x.

35. With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the basis for applying the range of discount rates from 9.5% to 11.5%; (ii) the implied terminal value of the Company; (iii) the basis for applying a range of perpetual growth rates of 0.0% to 2.0%; (iv) the Company's unlevered cash flows used in the analysis; (v) the basis for the assumption that unlevered free cash flows would decline in perpetuity after December 31, 2039 at a range of rates of free cash flow decline of 30% to 20%; and (vi) the number of fully diluted outstanding shares of the Company as of August 14, 2020.

36. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

39. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisors' valuation analyses and resultant fairness opinion.

41. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

42. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek other remedies. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

43. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

44. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

45. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

46. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

47. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

48. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

49. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein

to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

50.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

### COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Momenta within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Momenta, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Momenta, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Momenta, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

55. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 2, 2020

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

17